990 F.2d 1265
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mary SEGUNDO, Defendant-Appellant.
 No. 92-10242.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 2, 1993.
Decided March 16, 1993.
 
 Before FARRIS, POOLE and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 On February 22, 1991, Mary Segundo shot her common law husband Brannon Lewis outside their home in Sacaton, Arizona, on the Gila River Indian Reservation. The government alleged that Segundo shot Lewis because she was jealous of his relationship with another woman. Segundo pleaded self-defense and testified at trial that the gun went off by accident.
 
 
 3
 The court instructed the jury on first and second degree murder and on voluntary manslaughter. The jury convicted her of second degree murder. Segundo appeals.
 
 
 4
 We reverse.
 
 I. Involuntary Manslaughter Instruction
 
 5
 The trial court declined to instruct the jury on involuntary manslaughter. A defendant is entitled to an instruction on a lesser included offense if two requirements are met: 1. the lesser offense is within the offense charged, and 2. a rational jury could find the defendant guilty of the lesser offense but not the greater. United States v. Wagner, 834 F.2d 1474, 1487 (9th Cir.1987) (citations omitted).
 
 
 6
 Involuntary manslaughter is a lesser included offense of murder. United States v. Lesina, 833 F.2d 156, 160 (9th Cir.1987). The government argues that the jury could not have acquitted Segundo of the greater charge of murder and convicted her of the lesser charge of involuntary manslaughter. We reject the argument.
 
 
 7
 In Lesina, we vacated a murder conviction because the jury instructions failed adequately to distinguish between second degree murder and involuntary manslaughter. Id. The instructions did not adequately differentiate between the extreme recklessness required to find second degree murder and the lesser degree of recklessness that constitutes involuntary manslaughter. Id. at 159. We emphasized that the "instructions forc[ed] the jury to impose guilt randomly rather than on the basis of a meaningful distinction between the crimes." Id. The jury should have been permitted to determine whether Segundo committed involuntary manslaughter rather than murder.
 
 
 8
 Segundo testified at trial that she shot Lewis by accident. (R.T. 1-8-92, pp. 16, 43). Her testimony was sufficient to warrant an involuntary manslaughter instruction. The government argues that because other evidence conflicted with Segundo's testimony, an involuntary manslaughter instruction was not warranted. Conflicting evidence is for the jury to evaluate. Lesina, 833 F.2d at 160; see also United States v. Browner, 889 F.2d 549, 554 (5th Cir.1989).
 
 
 9
 United States v. Wagner, 834 F.2d 1474, 1486, is not to the contrary. In Wagner, a prisoner threw a pail of scalding water in another inmate's face, pulled a knife from his jacket, chased the "much smaller [ ], unarmed, severely burned," man down the hall and stabbed him to death. Id. Not surprisingly, the court found that there was no evidence to allow the jury to convict the defendant of manslaughter but not murder.
 
 
 10
 The government argues that Segundo's failure to get medical help for Lewis conclusively establishes malice. But Segundo left the shooting scene after Lewis' brother came out of the house and went to call the police. The fact that Segundo left before help arrived does not establish malice. The jury should have been allowed to decide whether Segundo's flight was extremely reckless, merely negligent, or no crime at all. See Lesina, 833 F.2d at 160 ("An accidental killing may be second degree murder, manslaughter, or no crime at all") (citations omitted).
 
 
 11
 The government argues that the theory of self-defense conflicts with Segundo's testimony that the shooting was an accident. We reject the argument. "A self-defense theory advanced by the defense can be consistent with a conviction for involuntary manslaughter under some circumstances." United States v. Manuel, 706 F.2d 908, 915 (1983). The jury could have found that Segundo picked up the gun in self-defense, but fired by accident. Even if the self-defense and accident theories were inconsistent, Segundo would be entitled to raise both and have the jury instructed on both. United States v. Browner, 889 F.2d 549, 555 (5th Cir.1989); see also Mathews v. United States, 485 U.S. 58, 63 (1987); Lesina, 833 F.2d at 157.
 
 II. Self-Defense Instructions
 
 12
 We must consider the jury instructions as a whole to determine if they are misleading or inadequate. Oviatt v. Pearce, 954 F.2d 1470, 1480. "[C]hallenges to the formulation adopted by the court are reviewed for abuse of discretion." Id. at 1480.
 
 
 13
 The government must prove beyond a reasonable doubt that the defendant did not act in self-defense. Hankerson v. North Carolina, 432 U.S. 233, 244 (1976). The trial court must clearly instruct the jury that the government has the burden of disproving self-defense. DeGroot v. United States, 78 F.2d 244 (9th Cir.1935). Even a slight ambiguity as to the burden of proof for affirmative defenses is unacceptable. United States v. Corrigan, 548 F.2d 879, 883 (10th Cir.1977):
 
 
 14
 In the case of an affirmative defense, however, the potential for misinterpretation is too great to permit ambiguity. An affirmative defense admits the defendant committed the acts charged, but seeks to establish a justification or excuse. In the absence of clear instructions, it is not unlikely that the jury would infer that the government has borne its burden and that it is up to the defendant to establish his justification.
 
 
 15
 Id.; see also United States v. Jackson, 726 F.2d 1466, 1469 (9th Cir.1984).
 
 
 16
 The trial court told the jury in the first sentence of the self-defense instructions that "[t]he defendant has offered evidence of having acted in self-defense." Segundo argues that the jury might have inferred that because it was she who offered evidence of self-defense, she had the burden of proving self-defense. However, in the instructions for each charge, the court instructed the jury that the prosecution had the burden of proving that the defendant used more force than necessary.
 
 
 17
 Segundo argues that the court compounded the problem by adding the extra element. She argues that the self-defense section of the instructions told the jury that there were two components to self-defense but that the charge instructions told the jury that the prosecution only has the burden of proof with regard to one of those components. The self-defense section was silent about the burden of proof. Thus, Segundo argues that the jury might have inferred that she had the burden of proof for one component of self-defense.
 
 
 18
 The court's instructions incorporate both "components" of self-defense. If the jury found that Segundo used more force than reasonably necessary, it follows that it also found that she did not have a reasonable belief that the use of force was necessary. Although the trial court did not abuse its discretion, it could have avoided confusion by simply instructing the jury that the prosecution must prove that Segundo did not act in self-defense.
 
 CONCLUSION
 
 19
 We vacate the conviction and remand to the district court for a new trial with jury instructions that permit each side to argue its theory of the case.
 
 
 20
 Reversed.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by Ninth Circuit Rule 36-3